NOT DESIGNATED FOR PUBLICATION

Nos. 121,009
121,010

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of O.P. and R.P.,
Minor Children.

MEMORANDUM OPINION

Appeal from Anderson District Court; ERIC W. GODDERZ, judge. Opinion filed October 11, 2019.
Affirmed.

*Jessica F. Leffler*, of Law Office of Jessica F. Leffler, of Ottawa, for appellant natural mother.

*Brandon L. Jones*, county attorney, for appellee.

Before STANDRIDGE, P.J., ATCHESON and SCHROEDER, JJ.

PER CURIAM: Mother appeals the termination of her parental rights to her two children. The district court found that Mother is unfit, that the condition or conduct rendering her unfit is unlikely to change in the foreseeable future, and that termination is in the best interests of the children. Mother presents three arguments on appeal. First, she argues that the district court erred in applying the statutory presumption of unfitness. Second, she argues that even if she were properly presumed unfit under the statute, she provided sufficient evidence at the hearing to overcome the presumption. Third, she argues the State did not present sufficient evidence to show that she was unfit and her conduct was unlikely to change in the foreseeable future. Finding no error, we affirm.

1

Mother is the natural mother of O.P. and R.P., twins born in 2008. On August 22, 2017, S.P., the twins' maternal stepgrandmother (Grandmother), went to the Garnett Police Department to report concerns about the safety of the twins. Grandmother reported that Mother and the twins were living in Mother's vehicle at an unknown location and that Mother had a methamphetamine addiction and violent tendencies.

On August 23, 2017, Mother enrolled the twins in Garnett Elementary School and agreed to temporarily live with the twins at Grandmother's home. On August 24, 2017, Mother left Grandmother's house and did not return until August 26, 2017. Upon her return, Mother attempted to remove the twins from Grandmother's house. Fearing for the twins' safety if they were to leave with Mother, Grandmother called the police.

A police officer responded to Grandmother's call. Mother told the officer that she and the twins got kicked out of their old house in July and since then had been staying in Ottawa with a friend of hers. Mother insisted the family did not live in a car. Mother also reported that she was bipolar and that the last time she had used illegal drugs was eight months ago. Mother stated to the officer that she and the twins were moving back to her friend's house in Ottawa. The officer called the friend to verify Mother's statement and the friend "sounded surprised and stated, 'Oh, really?'" before telling the officer, "'I guess that would be ok, she still has some of her stuff here."

The officer also spoke with the twins. They told the officer that they mostly lived out of the family's car and only occasionally stayed at someone's house. Both children said they were scared of Mother because she would grab them by the cheeks or throat and squeeze very hard. They also reported that Mother gave them pills each night, which they claimed knocked them out and caused them not to remember anything. The twins said

they did not want to go with Mother. When confronted with the children's statements, Mother denied that she abused the children and denied the family lived in a car.

The police officer decided to take the children into protective custody. He gathered the children's medications and clothing. Grandmother told the officer that she did not want Mother on her property. Mother tried to leave, but had car problems. Even after putting a can of gas in the car, it took several jumps to start the car and once it ran, it would die any time it was put in reverse. The officer noticed that the car's windshield was "smashed" in two places limiting visibility; he also noticed that the car was so full of property that the only place where a person could sit was the driver's seat. He further noted that although a friend of Mother's purchased a can of gas for Mother to put in her car, the amount of gas—by itself—would not be enough to drive to Ottawa. The officer took this to mean that Mother did not have the means to make it to Ottawa with the twins as she had planned.

The police officer swore out affidavits detailing these events and on August 29, 2017, the State filed child in need of care (CINC) petitions alleging the twins were children in need of care. At a temporary custody hearing on September 12, 2017, the court placed the twins in the temporary legal custody of the Kansas Department for Children and Families (DCF). DCF contracted with KVC to provide case management services for the children and Mother. As part of these case management services, KVC placed the twins in the home of Grandmother and Grandfather, who is Mother's father.

On October 31, 2017, the district court adjudicated the twins to be children in need of care. KVC created a case plan for Mother with the goal of reintegration. The initial case plan required that Mother:

- maintain contact with KVC and update KVC with changes in contact information;
- maintain transportation;

3

- obtain and maintain housing;

- obtain and maintain employment;

- sign all releases requested by KVC;

- successfully complete parenting classes;

- complete a mental health intake and follow all recommendations; and

- participate in family therapy with the twins.

The court held a disposition hearing on December 5, 2017, during which it approved the case plan and the goal of reintegration of the twins with Mother. Although KVC requested Mother to provide a urinalysis test (UA) on the date of the hearing, Mother was unable to provide a sample. KVC also requested Mother provide a UA on January 23, 2018, but she again was unable to provide a sample. On February 19, 2018, Mother was able to provide a sample, which tested positive for methamphetamine. On February 27, 2018, Mother failed to appear for a scheduled UA.

KVC developed a second case plan for Mother. This second case plan required that Mother comply with the original case plan tasks, as well as the following additional tasks:

- follow all recommendations from her parenting assessment;

- obtain her own phone so that KVC can contact her; and

- submit to random UAs as requested by KVC.

The court approved the new case plan and kept reintegration as the permanency goal. KVC requested a UA on March 30, 2018, but Mother was unable to provide a sample. Although Mother was scheduled for seven weekly UAs from April 4, 2018, to May 21, 2018, Mother failed to appear for any of the scheduled drug tests.

On May 29, 2018, the district court held another review hearing. Given KVC's concerns that Mother was using drugs, the district court ordered Mother to complete a drug and alcohol assessment and follow any recommendations made as a result of the assessment. Mother completed the drug and alcohol assessment as ordered and was diagnosed with amphetamine use disorder. Although outpatient treatment was recommended, Mother did not follow the recommendation. In the six weeks after the hearing, Mother was scheduled to submit to five UAs. On June 4, 2018, and on June 20, 2018, she failed to appear. On June 25, 2018, she appeared but was unable to provide a sample. On July 3, 2018, she failed to appear. She did provide a UA on July 11, 2018, as scheduled, but tested positive for methamphetamine on that date.

On July 17, 2018, the district court held another review hearing. On July 23, 2018, Mother appeared for a scheduled UA, but was unable to provide a sample. She ultimately submitted to a mouth swab instead, which came back negative. She had another negative mouth swab on August 2, 2018.

On August 10, 2018, the State moved to terminate Mother's parental rights. The State alleged Mother was "unfit by reason of conduct or condition which renders the parents unable to care properly for the children and the conduct or condition is unlikely to change in the foreseeable future." The State attached a lengthy document detailing Mother's progress with KVC. The document stated:

> "[Mother] does not have housing
> "[Mother] has not shown proof of employment
> "[Mother] has not followed through with submitting UAs as requested—She has a few positive UAs and has no showed many requests
> "[Mother] is not following through with her drug and alcohol assessment recommendations which included outpatient treatment
> "[Mother] is not following through with her parenting assessment recommendation of medication management and taking medications as prescribed.

5

"Family therapy has not been completed as the children's therapist does not feel the children are ready for family therapy."

The court held a review hearing on August 27, 2018. The court subsequently scheduled a hearing for November 9, 2018, to hear evidence on the State's motion to terminate parental rights.

On August 22, 2018, less than two weeks after the State filed its motion to terminate parental rights, Mother tested positive for methamphetamine.

On November 9, 2018, the district court held the evidentiary hearing as scheduled. The first witness called by the State was Fawn Gahman-Amos, who had been the KVC family case manager assigned to the case until September 2018, which was about a month after the motion to terminate parental rights was filed and two months before the hearing. She testified that during the 13 months in which she was the case manager, Mother did complete some of her case plan tasks but did not complete most of them. With regard to the tasks Mother did complete, Gahman-Amos testified Mother provided a current phone number, signed necessary releases for KVC, completed a mental health intake, and followed the mental health recommendations.

With regard to the tasks Mother did not complete, Gahman-Amos testified extensively about Mother's failure to remain drug free, which we set forth in detail above. Gahman-Amos also testified that Mother failed to maintain stable housing. Mother's efforts at obtaining and maintaining adequate housing "varied." When the case started, Mother was living in her car with the kids. Then, she moved in with a friend, but the arrangement violated the terms of her friend's low income housing lease. At one point, Mother said she obtained a house in Ottawa that "needed a lot of repairs done which she was working on." But KVC was never able to do a walk-through of this home.

6

Gahman-Amos also testified that Mother failed to maintain reliable transportation. Specifically, Mother's car was not tagged or insured and the car routinely had mechanical problems. With respect to employment, Gahman-Amos said that although Mother reported she was employed at American Eagle, Mother failed to provide any verification of that employment to KVC.

With regard to visits with the children, Gahman-Amos noted that Mother had not had visitation since March 2018. Gahman-Amos explained, however, that visitation had been discontinued because the children did not want to visit Mother and because the children's therapist and guardian ad litem (GAL) recommended against visitation. During the 14 months in which the case was pending, Mother saw O.P. 3 times and R.P. 5 times. R.P. said she would like to see Mother but did not want to live with her. O.P. said he did not want to see Mother at all. Although Mother did not attend family therapy as set forth in the case plan, Gahman-Amos testified that the children's therapist did not recommend family therapy because in the therapist's opinion, the children were not ready for it.

KVC permanency supervisor Michele Hockett was the next witness to testify. Hockett's testimony was limited in scope to Mother's failure to secure and maintain stable housing. It appears that Hockett testified because the current caseworker, Amy Karr, was not available. Hockett testified that Karr had completed a "partial walk-through" of a home in Ottawa where Mother was staying with her brother. Hockett said Karr called it a "partial" walk-through because Karr reported that she had not been permitted to take pictures or observe a bedroom where Mother's brother was sleeping. Hockett testified that Karr's report reflected that Mother told Karr that this was not the home where she wanted to reintegrate with the twins. Hockett said that as of the hearing, Mother had not identified the home in which she did want to reintegrate with the children. As such, Hockett said KVC had not completed a home inspection.

Mother testified next. She said she had never been given a copy of the case plan outlining her case plan tasks. She said she does have reliable transportation because she lives with her brother, who has two properly licensed and insured vehicles that he allows her to use. She said she worked for American Eagle "a couple of different times" throughout the case and previously had shown Gahman-Amos a copy of an e-mail from the staffing company confirming her employment in March.

Mother said she had a drug and alcohol evaluation done but could not afford to participate in treatment. Despite this, she said she did not think she had a drug problem at the time of the hearing. She pointed to the fact that she had provided clean UAs in the two months before the hearing. Finally, Mother testified that she recently had obtained stable housing but KVC had not yet completed the walk-through necessary to approve it.

The individual who owns the house in which Mother currently was residing testified next. The owner testified that Mother was staying at the house with her brother. The owner said she has an agreement with Mother and her brother that "[t]hey pay the bills, take care of [the house], and everything's fine." She said she would be willing to draft a lease if needed.

Mother's brother also testified. He said he previously lived with Mother and the twins in the house and the arrangement was fine. He testified he had a good relationship with Mother and the twins. He also said he had two reliable, tagged, and insured cars that Mother could use "[a]t any point in time."

At this point, the court continued the hearing in order to hear testimony from the GAL, who was not available to appear at the November 9, 2018 hearing. The GAL testified that the twins "cannot stand the idea of being with their mother. She is angry. She is emotionally abusive. [O.P.] has indicated, even, that she has been physically abusive at least once or twice." The GAL stated that the children "prospered

8

immediately" when they were placed with Grandmother and Grandfather. The GAL recommended terminating Mother's parental rights, noting it was not in the twins' best interests to go back to Mother "while she's trying to get her life together. Who knows how long that's going to take and they're going to be grown up in a few years."

The district court found clear and convincing evidence that Mother was unfit by reason of conduct or condition which rendered her unable to properly care for her children and is unlikely to change in the foreseeable future. The court based its findings on K.S.A. 2018 Supp. 38-2269(b)(3), (b)(7), (b)(8), and (b)(9), and the presumptions of unfitness in K.S.A. 2018 Supp. 38-2271(a)(5), which the court found Mother had failed to sufficiently rebut. The district court further found that Mother's condition was unlikely to change in the foreseeable future and that it was in the best interests of the twins to terminate Mother's parental rights.

ANALYSIS

A parent has a constitutionally protected liberty interest in the relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 759-60, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Given the inherent importance and unique character of that relationship, the right has been deemed fundamental. Accordingly, the State may extinguish the legal bonds between parent and child only upon clear and convincing proof of parental unfitness. K.S.A. 2018 Supp. 38-2269(a); *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

As provided in K.S.A. 2018 Supp. 38-2269(a), the State must prove the parent to be unfit "by reason of conduct or condition" making him or her "unable to care properly for a child" and that the circumstances are "unlikely to change in the foreseeable future." The statute contains a nonexclusive list of nine conditions that singularly or in combination would amount to unfitness. K.S.A. 2018 Supp. 38-2269(b). And the statute

9

lists four other factors to be considered if a parent no longer has physical custody of a child. K.S.A. 2018 Supp. 38-2269(c). The State may also rely on one or more of the 13 statutory presumptions of unfitness outlined in K.S.A. 2018 Supp. 38-2271(a).

In reviewing a district court's determination of unfitness, an appellate court must be convinced, based on the full evidentiary record considered in a light favoring the State as the prevailing party, that a rational fact-finder could have found that decision "highly probable, *i.e.*, [supported] by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. at 705. The appellate court cannot weigh conflicting evidence, pass on the credibility of witnesses, or otherwise independently decide disputed questions of fact. 286 Kan. at 705. In short, any conflicts in evidence must be resolved to the State's benefit and against Mother.

Upon a finding of unfitness, the district court must then decide whether termination of parental rights is "in the best interests of the child." K.S.A. 2018 Supp. 38-2269(g)(1). As directed by the language of K.S.A. 2018 Supp. 38-2269(g)(1), the district court gives "primary consideration to the physical, mental and emotional health of the child." The district court makes that determination based on a preponderance of the evidence. See *In re R.S.*, 50 Kan. App. 2d at 1116. The best interests issue is essentially entrusted to the district court acting within its sound judicial discretion. See 50 Kan. App. 2d at 1115-16. An appellate court reviews those sorts of decisions for abuse of discretion. A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

1. *Presumption of unfitness*

In her first argument on appeal, Mother claims the district court erred in applying the statutory presumption of unfitness. Under K.S.A. 2018 Supp. 38-2271(a)(5), a district court may presume a parent is unfit if his or her children have been in an out-of-home placement under court order "for a cumulative total period of one year or longer and the parent has substantially neglected or willfully refused to carry out a reasonable plan, approved by the court, directed toward reintegration."

Mother concedes the twins were in an out-of-home placement, under court order, for more than a year at the time of the termination hearing. Nevertheless, she contends that there is insufficient evidence in the record to support a finding that she substantially neglected to carry out a reasonable plan directed toward reintegration. In support of her contention, Mother admits she failed to complete some of the case plan tasks but argues her failure to do so was based on a misunderstanding of her ability to do so.

Mother's argument appears to be focused on the court's finding that she failed to comply with the case plan tasks requiring her to follow the recommendations of her drug and alcohol assessment, including but not limited to obtaining outpatient drug treatment and submitting clean UAs when requested by KVC. Mother claims she did not participate in outpatient drug treatment because she could not afford to do so. Had she been made aware that she could obtain outpatient drug treatment at no cost to her, Mother says she would have done so. We are not persuaded by Mother's argument.

With regard to drug treatment, Gahman-Amos testified at the termination hearing that she gave Mother three options where KVC could help with the costs of treatment: a free option in Lawrence, a free option in Topeka, and a reduced-cost one in Garnett where KVC could cover the costs. Gahman-Amos testified that, in response to hearing

11

those options, Mother said Lawrence and Topeka were too far and "the only time she'll go to Garnett is for court."

At the hearing, Mother testified that she had a drug and alcohol evaluation done but never saw the resulting report. Nevertheless, she said she understood from Gahman-Amos that the report recommended outpatient treatment. But Mother said that Gahman-Amos' testimony earlier in the hearing was the first time she ever heard that treatment in Garnett would be free. Mother noted that if she had known treatment in Garnett would be free, she currently would be enrolled in treatment. Despite this testimony, Mother went on to assert that she did not think she currently had a drug problem. In support of this assertion, Mother noted that her random UA screenings had been clean since the new caseworker had taken over in September 2018.

In her argument, Mother essentially is asking this court to pass on the credibility of witnesses and weigh conflicting evidence, which we are prohibited from doing by the applicable standard of review. The evidence presented at the hearing and upon which the court relied to find Mother presumptively unfit is as follows:

- Mother failed to participate in outpatient drug treatment, failed to appear for scheduled UA testing on more than 10 separate occasions (despite knowing that KVC considers a no-show as a positive test), failed to provide a sample at a scheduled UA on 4 separate occasions, and tested positive for methamphetamine on 3 occasions, one of which occurred after the State filed its petition to terminate her parental rights.
- Mother failed to maintain employment, a conclusion supported by her own admission at the hearing that her employment for American Eagle was temporary and she was not working at the time of the termination hearing.
- Mother failed to maintain stable housing and maintain suitable transportation from August 29, 2017 (when the State filed its CINC petition) through August 10, 2018

12

(when the State filed its petition for termination of rights). Mother's late attempts to comply with the case plan by moving in with her brother and identifying her brother's cars as transportation on which she could rely are both too little and too late to detract from the clear and convincing evidence in the record establishing her failure to maintain stable housing and reliable transportation.

When viewed in the light most favorable to the State, there is clear and convincing evidence that Mother substantially neglected or willfully refused to carry out a reasonable reintegration plan. Accordingly, we find no error in the court's decision to find Mother presumptively unfit under K.S.A. 2018 Supp. 38-2271(a)(5).

2. *Rebutting the presumption of unfitness*

When the presumption applies, "[t]he burden of proof is on the parent to rebut the presumption of unfitness by a preponderance of the evidence." K.S.A. 2018 Supp. 38-2271(b). In this case, then, Mother was required to show by a preponderance of the evidence that she was presently fit and able to care for the twins, or that she would be fit and able to care for the twins "in the foreseeable future." K.S.A. 2018 Supp. 38-2271(b). The district court found Mother failed to provide sufficient evidence to satisfy her burden of proof. On appeal, Mother asserts that she did present sufficient evidence to overcome the presumption.

To resolve the issue raised by Mother, we must review the record, in a light most favorable to the State, to determine whether clear and convincing evidence supports the district court's finding that Mother failed to rebut the presumption of unfitness by a preponderance of the evidence. *In re B.D.-Y.*, 286 Kan. at 705. We find that the record provides clear and convincing evidence for the district court's conclusion that Mother did not rebut the presumption.

13

In support of her claim that she rebutted the presumption of unfitness by a preponderance of the evidence, Mother essentially raises the same arguments here that she made above. She claims that she did not complete drug treatment because she could not afford the treatment. But, as pointed out above, Gahman-Amos testified she directed Mother to two free and one reduced cost treatment option, which also would be free because KVC would pay the reduced cost. The district court evidently credited Gahman-Amos' testimony over Mother's; this court cannot reweigh the evidence or reassess witness credibility. *In re B.D.-Y.*, 286 Kan. at 705.

Mother also argues that she had begun complying with requested UAs by the current caseworker. True, the record reflects that Mother submitted two negative UAs between September and November 2018. Nevertheless, as discussed above, the record also shows that Mother no-showed more than 10 UAs and tested positive for methamphetamine 3 times, including 1 time after the State warned it would move to terminate her rights. The two negative UAs after the petition for termination of parental rights had been filed but before the termination hearing falls far short of rebutting the significant and consistent pattern of drug use and no-shows and general noncompliance with her case plan during the 12-month time period from the filing of the CINC case to the filing of the petition for termination of parental rights. Parental unfitness can be judicially predicted from a parent's past history. See *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982). We find clear and convincing evidence supports the district court's decision finding that Mother failed to rebut the presumption of unfitness by a preponderance of the evidence.

3. *Unfitness*

In addition to finding that Mother failed to rebut the presumption of unfitness under K.S.A. 2018 Supp. 38-2271(a)(5), the district court also found that Mother was unfit under K.S.A. 2018 Supp. 38-2669(b)(3), (b)(7), (b)(8), and (b)(9). Those factors are:

"(3) the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child;

. . . .

"(7) failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family;

"(8) lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child; and

"(9) whether, as a result of the actions or inactions attributable to the parent and one or more of the factors listed in subsection (c) apply, the child has been in the custody of the secretary and placed with neither parent for 15 of the most recent 22 months beginning 60 days after the date on which a child in the secretary's custody was removed from the child's home."

On appeal, Mother contends that there is insufficient evidence in the record to support the termination of her parental rights under K.S.A. 2018 Supp. 38-2269. Mother's argument in support of her claim is cursory; in fact, she does not address the individual factors at all. Mother's entire argument on this issue states:

"The District Court terminated Appellant's rights pursuant to K.S.A. 38-2269 finding that factors contained in subsections (b)(3), (7), (8), and (9) were applicable. The Court also found, as is required to terminate parental rights, that Appellant's conduct or condition was unlikely to change in the foreseeable future. As argued above, Appellant asserts that she has completed some and could complete the remainder of her case plan tasks in the very near future. As such Appellant asserts the evidence in the record establishes that she could soon rehabilitate herself as a fit and proper parent to care for her children and that the District Court improperly terminated her parental rights."

Issues not adequately briefed are deemed waived or abandoned. *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018). Additionally, points raised incidentally in briefs and not argued therein also are deemed abandoned. *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017). We find Mother has waived and abandoned

15

any argument related to the sufficiency of the evidence in the record to support termination of her parental rights under K.S.A. 2018 Supp. 38-2269.

Notably, the decision we reach on this issue would be the same even if Mother had not waived and abandoned this argument. Having considered all the evidence in the light most favorable to the State, we find clear and convincing evidence that Mother was unfit under K.S.A. 38-2669(b)(3), (b)(7), (b)(8), and (b)(9), that the condition or conduct rendering her unfit is unlikely to change in the foreseeable future, and that termination is in the best interests of the children.

Affirmed.